UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EKATERINE GOGILASHVILI, JANE DOE
[REDACTED][1], AND MAMUKA
RAMISHVILI,

               Plaintiffs,

     - against -

UNITED STATES ATTORNEY GENERAL
ERIC H. HOLDER, JR., HILARY R. CLINTON
IN HER OFFICIAL CAPACITY AS
SECRETARY OF STATE, UNITED STATES
DEPARTMENT OF STATE, PATRICK
WINGATE IN HIS OFFICIAL CAPACITY AS
CONSULAR CHIEF OF THE EMBASSY OF
THE UNITED STATES IN GEORGIA,
EMBASSY OF THE UNITED STATES IN
GEORGIA,

               Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
11-CV-01502 (RRM)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

On March 28, 2011, Ekaterine Gogilashvili, Mamuka Ramishvili, and their minor daughter (together, "plaintiffs") filed this action in the nature of mandamus and for declaratory and injunctive relief to compel the United States Attorney General, Eric H. Holder, Jr., the Secretary of State, Hilary R. Clinton, the United States Department of State, the Consular Chief of the Embassy of the United States in Georgia, Patrick Wingate, and the Embassy of the United States in Georgia ("the Embassy"), (together, "defendants"), to adjudicate plaintiff Ramishvili's motion to reconsider the refusal of his request for a visa, as well as for various forms of alternative relief. (Compl. (Doc. 1); Amended Compl. (Doc. 10).) On October 3, 2011,

---

[1] The name of plaintiffs' minor child has been redacted.

defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. (Mot. to Dismiss (Doc. 12).)

For the reasons set forth below, this Court grants the motion to dismiss, thereby dismissing all claims against all defendants.

## BACKGROUND[2]

Plaintiffs Gogilashvili and Ramishvili were married on September 16, 1993, in the Republic of Georgia. (Amended Compl. ¶23.) They bore one daughter. (*Id.*) In 2001, Gogilashvili traveled to the United States while Ramishvili remained in Georgia with their daughter. (*Id.* at ¶24.) In the fall of 2003, Gogilashvili and Ramishvili divorced. (Abruzzo Decl. at F-1–F-6; Divorce Certificate, Ex. 1 to Kolbe Decl. at D007–12.) Approximately four years later, Gogilashvili was naturalized as a citizen of the United States. (Amended Compl. ¶12.)

On March 1, 2005, Ramishvili married Manana Tinikashvili, a native and citizen of Georgia. (*Id.* at ¶28.) On a date not specified in the complaint, but allegedly prior to their wedding, Ramishvili and Tinikashvili each individually applied for the "diversity visa" program (also known as the "diversity visa lottery"), which makes available a limited number of immigrant visas each year for citizens of certain countries. (*Id.* at ¶27.) In June 2005, Tinikashvili was informed that she had been selected for the diversity visa lottery, and Ramishvili and Tinikashvili thereafter applied, as husband and wife, for a visa based on Tinikashvili's selection. (*Id.* at ¶¶29–30.) After interviewing husband and wife, the consular

---

[2] The facts are taken from the amended complaint, and the documents attached by plaintiff to the original complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)). Because the motion turns on jurisdictional issues, facts are also taken from relevant materials submitted by the parties. *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004).

officer denied their visa applications on the ground that they were inadmissible under INA Section 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for having attempted to procure an immigration benefit by fraud or willful misrepresentation of a material fact. (*Id.* at ¶¶30–32.)

Approximately two years later, in February 2009, Ramishvili and Tinikashvili divorced. (*Id.* at ¶38.) Gogilashvili, Ramishvili's former wife, had since become a United States citizen, and, on September 27, 2009, Gogilashvili and Ramishvili were remarried. (*Id.* at ¶39.) About six weeks later, on or about November 12, 2009, Gogilashvili filed a visa petition (Form I-130) on Ramishvili's behalf. (I-130 Application, Ex. 2 to Kolbe Decl. at D013.) On February 23, 2010, the Form I-130 was approved. (*Id.*) Ramishvili then applied for a visa with the Georgian consulate. After interviewing Ramishvili, the consular official refused the visa on the basis of "misrepresentation," citing again INA Section 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i). (Amended Compl. at ¶43.)

Thereafter, counsel for plaintiffs engaged in a series of email communications with officials at the Embassy, the contents of which are undisputed. On August 25, 2010, counsel for plaintiffs sent the consular officer an email requesting that they be informed of the "nature of the alleged misrepresentation." (Email Corr., Ex. C to Compl. at C-6.) On September 9, 2010, the Consular Section informed counsel for plaintiffs by email that the nature of the misrepresentations underlying the denial had been marriage fraud, saying Ramishvili had "entered into a sham marriage" with Tinikashvili and had "since re-married his first wife, Ms. Gogilashvili, after she obtained the ability to petition." (*Id*. at C-5.)

In late December 2010, counsel for the plaintiffs requested reconsideration of the consular officer's decision. (Email Corr., Ex. G to Abruzzo Decl. at G-1–2). On February 15, 2011, the Consular Section stated via email to plaintiffs' counsel that it does "not perform review

functions." (Email Corr., Ex. C to Compl. at C-3.) On February 16, 2011, plaintiffs' counsel replied that the Embassy had a nondiscretionary duty to reconsider their application under 22 C.F.R. § 42.81(e), quoting the regulation. (*Id.* at C-2.) On February 17, 2011, the Consular Section replied that the Consular Chief had "reviewed the decision in Mr. Ramishvili's case on August 26, 2010" and "conducted a thorough review of Mr. Ramishvili's application from 2005, and confirmed the finding." (*Id.*) Plaintiffs point out that August 26 is only one day after the initial denial of Ramishvili's application, and *before* the Embassy received plaintiffs' motion to reconsider and the additional evidence submitted therewith. (Amended Compl. ¶57.) On February 18, 2011 and again on March 2, 2011, plaintiffs' counsel replied via email that the Consular Chief's August 26, 2010 review is not the reconsideration contemplated in 22 C.F.R. § 42.81(e), which allows applicants to "adduce further evidence tending to overcome the ground of ineligibility." (Ex. C to Compl. at C-1.)

Having received no response, plaintiffs filed this action on March 28, 2011. Thereafter, on April 27, 2011, the Consular Chief explained via email to plaintiffs' counsel that his February 17, 2011 review of the case had included a review of all of the material that had been submitted with counsel's request for reconsideration, but that he had found it insufficient to overcome the consular officer's refusal. (Email Corr., Ex. 3 to Kolbe Decl. at D017.) Plaintiffs do not dispute receipt of this communication. (*See* Amended Compl. at ¶63.) Consular Chief Patrick Wingate also now affirms the content of that communication: that on February 17, 2011 he "reviewed all of the evidence submitted with Mr. Ramishvili's request for reconsideration and determined that it did not overcome the consular officer's determination that Mr. Ramishvili was ineligible."

4

(Declaration of Consular Section Chief Wingate ("Wingate Decl."), Ex. 3 to Kolbe Decl. at D015 ¶3.)[3]

Plaintiffs filed an amended complaint on July 13, 2011, pursuant to the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*. Plaintiffs seek mandamus with respect to 22 C.F.R. § 42.81(e), which they allege creates a mandatory duty for consular officials to reconsider refusals. Plaintiffs further allege a violation of 5 U.S.C. § 555, requiring agencies to "conclude a matter presented to [them]," which failure to so do, plaintiffs allege, in turn violates their First and Fifth Amendment rights. (Amended Compl.) Alternatively, plaintiffs challenge the visa denial as lacking legitimacy, and seek to compel defendants to provide reasons, reopen the case, allow plaintiff to submit additional evidence, and re-adjudicate within 30 days. (*Id.*) On October 3, 2011, defendants filed a fully briefed motion to dismiss. (Mot. to Dismiss (Doc. 12).)

---

[3] Plaintiffs argue that the statements of Chief Wingate in his declaration should not be considered, because they are conclusory and hearsay, as the statements were not made at trial or a hearing. (Mem. Opp. to Mot. to Dismiss (Doc. No. 13) at 11.) To accept this argument would be to deem all affidavits to be inadmissible hearsay, as they are statements made out of court. This is incorrect. *J.S. ex rel. N.S.*, 386 F.3d at 110. The hearsay prohibition precludes consideration of statements, *contained* in an affidavit but *made* at a prior time, that are offered for their truth. *See, e.g.*, *Kamen v. AT&T*, 791 F.2d 1006, 1009 n.3 (2d Cir. 1986) (finding it improper to consider statements relayed in a lawyer's affidavit, statements that were made by the lawyer and others *prior* to the making of the affidavit, that were being offered for their truth). Chief Wingate's affirmation that he reviewed the plaintiffs' request for reconsideration is not hearsay.

5

## DISCUSSION

### I. Lack of Jurisdiction

#### A. Standard of Review for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court sua sponte."). In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). This Court also "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

#### B. Doctrine of Consular Nonreviewability

The doctrine of consular nonreviewability provides that courts do not have jurisdiction to review decisions made by consular officers regarding the grant or denial of visas. *Am. Acad. of Religion v. Napolitano* (*"American Academy II"*), 573 F.3d 115, 123 (2d Cir. 2009); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181–82 (2d Cir. 1978); *Rivera de Gomez v. Kissinger*, 534 F.2d 518, 519 (2d Cir. 1976). The Second Circuit has expressed doubt as to whether the doctrine rests on a lack of "subject matter jurisdiction" in a formal sense, and has instead suggested that it may

involve a withdrawal of such jurisdiction or even prudential concerns. *American Academy II*, 573 F.3d at 123. However, the doctrine's validity has been consistently recognized. *Id*. It precludes judicial review not only under the Immigration and Nationality Act, but also under other jurisdictional statutes, such as the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., and the Declaratory Judgments Act, 28 U.S.C. § 2201. *Wan Shih Hsieh*, 569 F.2d at 1181–82. Therefore, to the extent that any of plaintiffs' claims rely on these jurisdictional bases, such claims are dismissed.

Courts have, however, limited the applicability of the doctrine in certain circumstances. Plaintiffs argue that while this Court does not have jurisdiction to review the denial of a visa, it does have jurisdiction to force the adjudication of a visa. Alternatively, plaintiffs argue that this Court has jurisdiction to review the denial itself, as the actions of the consular official in denying the reconsideration allegedly implicate constitutional rights of the United States citizen plaintiffs. For the reasons below, neither argument prevails.

**C. Failure to Adjudicate**

The Ninth Circuit has permitted review of a consular officer's failure to take action on a visa application, explaining that a challenge to the authority of the consul to refuse to take such action is not the same as a challenge to a decision within the consul's discretion. *See Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997) (entertaining a petition for mandamus to require consular officers to act either to grant or deny visas). At least one court in this circuit has also recognized the ability of the court to review such failure of a consular officer to act on a visa application. *See Am. Acad. of Religion v. Chertoff* (*"American Academy I"*), 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006).[4]

---

[4] *American Academy I* is the only case in this circuit that this Court is aware of to have acknowledged this carve-out to the doctrine of consular nonreviewability. Notably, it did so only where the challenge to the consular officer's

7

Here, plaintiffs do not seek to compel the adjudication of Ramishvili's visa application; it is undisputed that the initial visa application was formally denied on August 25, 2010. (*See* Amended Compl. ¶43; Refusal Worksheet dated Aug. 25, 2010, Ex. D to Compl. at D-16.) Instead, plaintiffs seek to compel reconsideration of the denial, together with review of the additional materials submitted by their counsel after the visa was denied, pursuant to 22 C.F.R. § 42.81(e). That provision states: "Reconsideration of refusal. If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." *Id.* The Second Circuit has not considered whether, assuming there is some exception to nonreviewability for failure to perform a necessary duty, the exception would extend beyond the obligation to adjudicate visa applications in the first instance, and also reach requests for reconsideration. However, even assuming *arguendo* that an expansion of the exception would be appropriate, plaintiffs' argument is without merit as there was no failure to act in this case. At most, the duty of the official was to adjudicate the reconsideration, and denial of reconsideration was communicated to plaintiffs' counsel no later than April 27, 2011. (Email Corr., Ex. 3 to Kolbe Decl. at D017; Amended Compl. at ¶63.)

Plaintiffs allege that the review and denial of their motion for reconsideration "did not actually occur." (Amended Compl. ¶77.) However, plaintiffs do not dispute that they were notified of the denial of their motion to reconsider on April 27, 2011 by the Consular Chief of the Embassy. (*Id.* at ¶63.) A full reading of the complaint evinces no dispute that the

---

failure to act was coupled with an alleged violation of First Amendment rights of United States citizens affected by the failure to act—a separate exception to the doctrine, which is discussed further below. *Compare American Academy I*, 463 F. Supp. 2d at 421, *with Castillo v. Rice*, 581 F. Supp. 2d 468 (S.D.N.Y. 2008) (holding that the court lacked jurisdiction to review complaint that consulate failed to schedule interviews in reasonable time), and *Li v. Chertoff*, No. 06 CIV 13679 (LAP), 2007 WL 541974 (S.D.N.Y. Feb. 16, 2007) (expressly rejecting that there may be an exception to the doctrine for requests that a visa be adjudicated (as opposed to granted) within a reasonable period of time).

reconsideration was in fact denied. To the extent that plaintiffs are challenging a failure to "reconsider" the application in a broader sense—invoking some minimum degree of attention, thoughtfulness or time expended in the reconsideration process—they ask this Court to step over a line that it may not cross. Even if this Court were empowered to demand adjudication of the request for reconsideration, it is not empowered to assess the process of reconsideration undertaken by the consular officer. To do so would undermine the core of the doctrine of consular nonreviewability—a reflection of Congress's choice to have its policies in this regard enforced exclusively through the executive branch. *See Kleindienst v. Mandel*, 408 U.S. 753 (1972) (citing *Lem Moon Sing v. U.S.*, 158 U.S. 538 (1895)); *see also Hsieh v. Kiley*, 569 F.2d at 1182 ("The sole duty [of the agency] was to determine whether appellant's petition [] should be granted . . . . This it has done . . . . [Other issues] are matters solely within the [agency's] discretion, and hence are not reviewable . . . .").[5]

This limit on the Court's power applies even where the denial was incorrect. Consular nonreviewability applies to bar judicial review of a decision of a consular officer to grant or deny a visa even where the consular officer's decision is "erroneous, arbitrary, or contrary to agency regulations." *Aquino v. Immigration and Customs Enforcement*, No. 09-CV-0912 (ENV), 2009 WL 1406625, at *2 (E.D.N.Y. May 18, 2009); *Ngassam v. Chertoff*, 590 F. Supp. 2d 461, 466–67 (S.D.N.Y. 2008). Furthermore, "[w]hether the consul has acted reasonably or unreasonably, is not for us to determine. . . . It is beyond the jurisdiction of this court." *Burrafato v. U.S. Dept. of State*, 523 F.2d 554, 554 n.2 (2d Cir. 1975) (quoting *United States ex rel. London v. Phelps*, 22 F.2d 288, 290 (2d Cir. 1927)); *Li v. Chertoff,* No. 06 CIV 13679 (LAP), 2007 WL 541974, at *1

---

[5] For the same reasons, plaintiffs' request for discovery is denied. Given that this Court's jurisdiction to force adjudication of Ramishvili's request for reconsideration extends only where there is a failure to so adjudicate, the actions taken by the consular officer in whatever process resulted in the denial of said reconsideration are irrelevant to the issues within this Court's jurisdiction.

9

(S.D.N.Y. Feb. 16, 2007). Because the visa application and reconsideration request were both adjudicated, this Court may not review the consular official's denial, unless another exception to nonreviewability applies.

### D. Constitutional Claims of United States Citizens

The Second Circuit has recognized a different exception to the doctrine of nonreviewability where denial of a visa is alleged to violate the constitutional rights of a United States citizen. *See American Academy II*, 573 F.3d at 123–25 (relying on *Mandel*, 408 U.S. 753); *Burrafato*, 523 F. 2d at 556 (same); *American Academy I*, 463 F. Supp. 2d at 416. Where the exception applies, a court is empowered to engaged in a limited review—known as "*Mandel* review"—of the consular officer's denial of the visa. *American Academy II*, 573 F.3d at 123–25. If, upon such review, the court finds that the consular officer denied the visa "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of discretion, nor test it by balancing its justification against the [constitutional] interests." *Id.* at 125 (quoting *Mandel*, 408 U.S. at 769–70).

Here, Gogilashvili and her minor daughter, the citizen plaintiffs, have alleged that defendants' denial of their request for reconsideration deprives them of "their First Amendment Rights to freedom of intimate association—that is, their personal choices in matters of marriage and family life, because it separates [citizen plaintiffs, wife and daughter, from] their foreign national husband and father" and deprives them of "their Fifth Amendment rights to Due Process." (Amended Compl. ¶¶69, 74.) However, plaintiffs have not identified any cognizable constitutional right implicated by the consular official's actions. No constitutional right of a citizen spouse is violated by deportation or denial of a visa application of his or her alien spouse. *See Burrafato*, 523 F.2d at 555; *Li*, 2007 WL 541974, at *2; *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 104–06 (D.D.C. 2011); *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990);

10

*Ben-Issa v. Reagan*, 645 F. Supp. 1556, 1561 (W.D. Mich. 1986). Indeed, the breadth of the nonreviewability rule would be significantly curtailed by acknowledging such a right in and of itself. If marriage to a United States citizen automatically afforded review, a challenge to an allegedly erroneous visa denial could regularly be restyled as an affront to the citizen spouse's constitutional rights. This circuit has historically rejected such challenges. *See Burrafato*, 523 F.2d at 555; *Li*, 2007 WL 541974, at *2.[6]

Therefore, the doctrine of nonreviewability applies, and plaintiffs are not entitled to even a limited review of the decision of the consular official. However, as explained below, even if plaintiffs had alleged a valid constitutional right of the citizen plaintiffs, they have failed to allege facts stating a claim that would survive the limited *Mandel* review.

## II. Failure to State a Claim

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71

---

[6] Plaintiffs cite *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008), wherein the Ninth Circuit held that the plaintiff's protected interest in her marriage did raise constitutional issues entitling her to *Mandel* review. However, this holding is not binding on this Court, and it is contrary to precedent in this Circuit. *See Burrafato*, 523 F.2d at 555.

11

(citation omitted).  A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rather, the plaintiffs' complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

**B.  Failure to State a Claim Surviving *Mandel* Review**

Even if plaintiffs had alleged a valid constitutional right of the citizen plaintiffs, they have failed to allege facts that would survive the limited *Mandel* review.  If the basis for the consular officer's decision is facially legitimate and bona fide, the Court will not look behind his exercise of discretion to deny the reconsideration. *American Academy II*, 573 F.3d at 125. "[I]dentification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason." *Id.* at 126.  Where these requirements are met, this Court must "take literally the statement in *Mandel* that courts may not 'look behind' exclusion decisions;" a court may not engage in evidentiary inquiry as to "the consular officer's decision that a statutory ground of

inadmissibility applies to the visa applicant, at least in the absence of a well supported allegation of bad faith, which would render the decision not bona fide." *Id.* at 137.

Here, defendants have identified the basis of their denial of the application and reconsideration to be INA Section 212(a)(6)(C)(i) for having made a material misrepresentation for the purpose of obtaining an immigration benefit. (Amended Compl. ¶43.) Furthermore, defendants offered a reason to believe that Ramishvili did something fitting within this proscribed category, namely, that he "entered into a sham marriage" with Manana Tinikashvili "whom he had married for immigration purpose" and had "since re-married his first wife, Ms. Gogilashvili, after she obtained the ability to petition." (Ex. C to Compl. at C-5.) Plaintiffs have not disputed that the alleged misrepresentation, if true, would provide proper grounds for exclusion under the relevant statute. Therefore, upon the facts alleged in the complaint, defendants have offered a facially legitimate reason for denial.

Plaintiffs allege that the conclusion that Ramishvili's "marriage was fraudulent is not facially legitimate and bona fide and in bad faith given that it is clearly erroneous, illogical, in contravention of Immigration Law and The Embassy could not have known or had reason to believe the marriage was fraudulent as there was no immigration benefit available to Plaintiff Ramishvili and [Tinikashvili] through their marriage." (Amended Compl. ¶37.) However, even if the finding of misrepresentation was erroneous, the proper inquiry at this stage is into the facial legitimacy of the consular official's reason, not the factual finding underlying that reason—that is, whether the marriage was, in fact, a "sham." Further, while this Court may review a denial made in bad faith, plaintiff must offer a "well supported" allegation of bad faith to be entitled to an evidentiary inquiry. *American Academy II*, 573 F.3d at 137. Here, the amended complaint merely alleges that the findings underlying the reason for denial are

13

"erroneous, illogical, [and] in contravention of [law]." (Amended Compl. at ¶37.) Such allegations go to the reasonableness and legality of the consular officer's decision, not its sincerity. Merely alleging that the finding was erroneous is not a well-supported allegation of bad faith. *See Din v. Clinton*, No. C 10–0533 (MHP), 2010 WL 2560492, at *4 (N.D. Cal. June 22, 2010). In casting their allegation of bad faith this way, plaintiffs attempt to inject a merits analysis into *Mandel* review. While there may be some set of alleged facts that, when presumed true, are so egregiously illogical as to sufficiently plead bad faith, no such facts are alleged here. This Court is thus precluded from proceeding further.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint is GRANTED as against all defendants. The Clerk of Court is directed to enter judgment accordingly, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      June 25, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge